STATE OF NORTH CAROLINA v. LUKE SANDERS

No. 8510SC1286

(Filed 17 June 1986)

1. **Assault and Battery § 15.2— utility knife as deadly weapon—instruction proper**

    In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury where the evidence tended to show that defendant swung "something silver" at the victim who shielded himself with his arms, receiving three deep cuts which required 90 stitches, the trial court properly instructed that the utility knife or razor was a deadly weapon as a matter of law.

2. **Criminal Law § 122— jury's rejection of greater offense—necessity for unanimity—confusion—instruction proper**

    Where the jury had agreed unanimously on a lesser offense and was simply confused as to whether their rejection of the greater offense had to be unanimous, the trial court's instruction on their duty was proper, and neither the instruction nor the court's colloquy with the foreman in any way coerced a verdict.

APPEAL by defendant from *Barnette, Judge.* Judgment entered 19 July 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 5 May 1986.

Defendant was tried on proper indictment for assault with a deadly weapon with intent to kill inflicting serious injury. The State's evidence tended to show the following: The victim noticed

defendant harassing a boy in a bus station and told defendant to stop. A short time later, defendant approached the victim and asked for money. The victim refused and got up to board his bus. He felt someone tap his arm. The victim turned toward defendant, whom he saw swinging "something silver" at him. The victim shielded himself with his arms, receiving three deep cuts requiring 90 stitches. Officers arrived, arrested defendant, and found a "utility razor blade" in his right pocket.

Defendant testified that he cut the victim, but only in self-defense, after the victim and another man attacked him. He testified further that the razor blade he used would not do "that much damage."

The court instructed the jury that the knife or razor was a deadly weapon. The jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury. Defendant received a sentence in excess of the presumptive. He appeals.

*Attorney General Thornburg, by Senior Deputy Attorney General Eugene A. Smith and Associate Attorney General Mabel Y. Bullock, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., for defendant-appellant.*

EAGLES, Judge.

[1] Defendant first assigns error to the court's instruction that the knife or razor was a deadly weapon as a matter of law. Defendant failed to object to the instruction at trial, and therefore the only question properly before us is whether the instruction constituted "plain error." App. R. 10(b)(2); *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). Relying on *State v. Torain*, 316 N.C. 111, 340 S.E. 2d 465 (1986), we hold that it was not "plain error." In *Torain* defendant objected for the first time on appeal that the trial court erred in instructing that "a utility knife is a dangerous or deadly weapon." The court rejected the contention, holding that under the circumstances of the knife's use in the case not only was the instruction legally correct, but also positively required, relying on *State v. Smith*, 187 N.C. 469, 121 S.E. 737 (1924). We reached a similar result in *State v. Wiggins*, 78 N.C. App. 405, 337 S.E. 2d 198 (1985) (box cutter). As we noted in *State*

*v. Smallwood*, 78 N.C. App. 365, 337 S.E. 2d 143 (1985), in cases like this where the victim has actually suffered serious injury or death the courts have consistently held that a knife is a danger-ous or deadly weapon as a matter of law even if it was not pro-duced or described in detail at trial. The first assignment is overruled.

[2]  In his second assignment defendant argues that the court im-properly coerced a jury verdict. The jury was instructed on four possible verdicts: the indicted charge, two lesser included of-fenses, and not guilty. Neither side objected. The jury retired, then returned, and the following took place:

(Jury present.)

COURT: Okay. I assume you have not reached a verdict.

FOREMAN: Your Honor, we have a difference of under-standing on that matter. It is my interpretation that we have but questions were raised and I need a clarification from you at that point and I had hoped before we came back out.

May I briefly state what the situation is?

COURT: As long as you don't state what your — what your — what your verdict may be.

MR. KNUDSEN [Assistant District Attorney]: May I ap-proach the bench with counsel?

COURT: Uh-huh.

(Discussion off the record.)

COURT: Okay. Go ahead.

FOREMAN: Your Honor, I understood your instructions to indicate that it was our task to take these options and in the light of the evidence presented in this Court and our common sense understanding of that agree on one of these four ver-dicts. There are several specifications in there and we dis-cussed this in what we all thought was orderly manner and we agree unanimously on one of these options.

Then there was the interpretation advanced that we had to be unanimous in every detail. Obviously we were not unan-imous in one of the details.

And so then there was the notion that we were not unanimous in our agreement because we chose — we did not choose the first one, the unanimity was on another option.

COURT: On the option that you ultimately select, any one of the four, you must be unanimous.

FOREMAN: Yes, sir. That was my interpretation but I was not able to convince all members that that was the end of it, that any misgivings about any other point were automatically dropped once you have unanimity on that.

COURT: That's correct.

FOREMAN: My interpretation was correct on that?

COURT: Yes.

FOREMAN: Would you rather that we go back in the room?

COURT: Can you reach a verdict?

FOREMAN: Yes.

COURT: There's no point in making you come back tomorrow if you can do it.

FOREMAN: I think we can in a matter of a few minutes.

COURT: Be my guests. Go back out there and then come back out.

(Jury absent.)

(Jury present.)

COURT: Okay. Has the jury reached a verdict?

FOREMAN: We have, Your Honor.

The court's instruction, contends defendant, erroneously allowed the jury to act on the coercive assumption that once they reached a verdict they could abandon any concern that another verdict might be more appropriate. We note that the jury was not polled by either side.

In deciding whether instructions have had the effect of coercing a verdict we consider the circumstances under which the in-

structions were given and the probable impact of the instructions on the jury. *State v. Peek,* 313 N.C. 266, 328 S.E. 2d 249 (1985). Mere failure to follow the form instructions of G.S. 15A-1235 is not in itself reversible error. *Id.*

It is readily apparent from the colloquy between the court and the jury foreman in the jury's presence that the jury was not unanimous as to the "first option," the indicted offense, and that some members of the jury believed that to reject that "option" required a unanimous vote. The court correctly agreed with the foreman that this was not a proper interpretation, and correctly instructed the jury that its decision on any one of the four options (including not guilty) must be unanimous. The court had earlier instructed the jury in accordance with the provisions of G.S. 15A-1235. The jury foreman indicated that the jury had already reached a verdict: "we agree unanimously on one of these options." Even despite this colloquy, defense counsel did not see fit to poll the jury.

Under the circumstances, it is clear that neither the trial court's instructions nor the colloquy set out *supra* was coercive. The jury had already agreed unanimously on a lesser offense, and simply was confused as to whether their rejection of the greater offense had to be unanimous. The court instructed them correctly as to their duty. Defendant does not suggest, nor do we find, that the trial court comment about there being "no point in making you come back tomorrow" was at all coercive.

*State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978) and *State v. Roberts,* 270 N.C. 449, 154 S.E. 2d 536 (1967), cited by defendant, are distinguishable. In *Alston* the trial judge "wander[ed] into uncharted philosophical fields" and risked confusing the jury. 294 N.C. at 595, 243 S.E. 2d at 366. Nevertheless, the Supreme Court held that the charge, considered in context, gave the proper warnings and was not prejudicially erroneous. In *Roberts,* the trial judge told the jury they *must* reach a unanimous verdict and told them to retire *until* they did so. This, held the court, constituted improper coercion. Here, on the other hand, the court kept its comments short and correct, and did not tell the jury that they *must* reach a unanimous verdict and order them to do so, but simply that on any verdict they did reach they would have to be unanimous. *See State v. Fowler,* 312 N.C. 304, 322 S.E. 2d

389 (1984) (numerical inquiry; no error where judge did not express displeasure 'and stated law correctly). We hold that no prejudicial error occurred.

Defendant has abandoned his remaining assignments of error. App. R. 28(a). We find no reversible error on the face of the record.

No error.

Chief Judge HEDRICK and Judge COZORT concur.