STATE OF NORTH CAROLINA v. RONALD JEFFERY GAITHER

No. COA00-1536

(Filed 5 February 2002)

1. **Appeal and Error— preservation of issues—denial of motion in limine—failure to object at trial**

   Although defendant contended that the court erred by denying his motion in limine to suppress out-of-court identification testimony, he did not object at trial and failed to preserve the issue for appellate review.

2. **Constitutional Law— disclosure of informant's identity— denied**

   The trial court correctly denied defendant's motion to compel disclosure of an informant's identity where defendant did not present any defense on the merits, did not contend that the confidential informant participated in or witnessed the crime, and failed to make any showing that the particular circumstances of his case mandated disclosure of the identity of the informant.

**STATE v. GAITHER**

[148 N.C. App. 534 (2002)]

Appeal by defendant from judgment entered 30 August 2000 by Judge Claude S. Sitton in Catawba County Superior Court. Heard in the Court of Appeals 29 November 2001.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General V. Lori Fuller, for the State.*

*Lisa Andrew Dubs for defendant-appellant.*

HUNTER, Judge.

Ronald Jeffery Gaither ("defendant") appeals from a judgment entered against him on the charge of robbery with a dangerous weapon. Defendant argues that the trial court erred in denying his motion to suppress the out-of-court identification of defendant by the robbery victim. We hold that defendant has failed to preserve this issue for appellate review. Defendant also argues that the trial court erred in denying his motion to compel the State to disclose the identity of the informant who provided information to the police leading to defendant's arrest. We disagree, holding that the State was not required to disclose the informant's identity. Accordingly, we find no error in defendant's trial.

## I. Facts

The evidence presented at trial tended to establish the following facts. On 23 November 1999, at approximately 8:00 p.m., Debra Mays ("Mays") drove to a Chinese food restaurant and entered the restaurant with her three-year-old daughter. Mays was carrying between $900.00 and $1,100.00 because she had intended to purchase a car that day. Donna Wilson Outen and her husband and their daughter were sitting in the restaurant having dinner. Mays ordered her food and sat down across from the counter, at which time she noticed a man, whom she later identified as defendant, enter the restaurant. Defendant sat down in the chair next to Mays and briefly spoke with Mays and her daughter. Then defendant got up, started to pace, and eventually left the restaurant.

Mays then retrieved her food, exited the restaurant, and proceeded to her car. After Mays took three or four steps, she looked over her shoulder and saw defendant approaching her. She got to her car and unlocked the door, at which time defendant grabbed her elbow. Defendant showed Mays that he had a knife in his hand, and he placed the knife to her throat and told her that if she screamed he would kill her. Defendant also waved the knife above Mays' daugh-

ter's head. Defendant said that he wanted Mays' money, so Mays gave him all of the money in her wallet.

Ms. Outen witnessed defendant robbing Mays through a window of the restaurant. When she saw defendant wave a knife to Mays' daughter, she went outside and told defendant to stop. Defendant let go of Mays and walked away toward the back of the restaurant. Mays and her daughter then went inside the restaurant to call 911.

A total of approximately ten to fifteen minutes elapsed between the time defendant first entered the restaurant and the time he left the restaurant. The restaurant was very well illuminated, and both Mays and Ms. Outen were able to get a good look at defendant. In addition, although the lighting outside in the parking lot was not as bright as in the restaurant, Mays was able to see defendant's face clearly from a distance of approximately one foot during the robbery.

Officers Davis and Burgin arrived at the restaurant within ten to fifteen minutes after the robbery. Officer Burgin questioned Mays and Ms. Outen, who provided descriptions of the perpetrator. Mays told him that the man was black, that he was wearing dark-colored jeans, tennis shoes, and a black T-shirt with an "Emerson's" logo, and that he was about the same height as Officer Burgin. She also pointed to someone and indicated that the perpetrator was of a similar weight. Mays did not describe any facial features of the perpetrator. Ms. Outen told the police that the perpetrator was a black male, wearing dark pants, a T-shirt with an "Emerson's" logo, and a pair of "shades" with gold on the sides.

The description of the perpetrator provided by Mays and Ms. Outen was broadcast over the police radio. Shortly thereafter, Officer Davis received information over his police radio that a certain confidential informant had notified the police that a person suspected of having committed the robbery was at the nearby home of Tina Jordan, also known as "Quacky." As Officer Davis returned to his police car to drive to "Quacky's place," he received additional information that the confidential informant had notified the police that the suspect had entered a red station wagon and was leaving the area.

Officer Davis arrived at the location in less than a minute and spotted a red station wagon. Officer Davis stopped the car and discovered two black males in the front seats and a third black male, defendant, in the back seat. Officer Davis testified that neither of the

individuals in the front seats fit the description of the perpetrator. Defendant was wearing a blue or green pullover sweatshirt, but otherwise fit the general description provided by Mays and Ms. Outen. Defendant consented to a pat-down search, and Officer Davis discovered a pair of glasses with gold down the sides in defendant's pocket. Officer Davis also removed defendant's wallet and found $490.00 in cash. The police detained defendant so that Mays could be brought to the location to identify him.

A police officer drove Mays in a police car to identify defendant. When she reached the place where defendant was being detained, she saw defendant standing in front of a police car with several police officers standing next to him and a second police car near defendant. The two police cars had their flashing blue lights turned on. At that time it was dark, but the headlights of the car in which Mays sat were shining on defendant. When defendant turned around so that Mays could see his face, she immediately identified him as the person who had robbed her, stating to the female officer in the car, "[t]hat's him, but he's not wearing the same shirt."

Ms. Outen testified at trial that she has known defendant since he was little. Her husband, Mr. Outen, similarly testified that he has known defendant all of his life. Ms. Outen did not make it known that she knew defendant until she was subpoenaed approximately two weeks prior to trial. She testified that she did not tell anyone that she knew the identity of the perpetrator prior to being subpoenaed because she was concerned for the safety of herself and her family. At trial, Ms. Outen and Mr. Outen both positively identified defendant as the person who robbed Mays.

## II. Procedural History

Prior to trial, defendant filed various motions, including: (1) a motion to suppress the out-of-court "show-up" identification of defendant; (2) a motion to suppress the in-court identification of defendant that occurred during the probable cause hearing; and (3) a motion to compel the State to disclose the identify of the informant, as well as a motion to dismiss based upon the State's refusal to disclose the informant's identity. The court conducted a pre-trial hearing and, at the end of the hearing, the trial court orally entered findings of fact and conclusions of law which were subsequently embodied in an order entered 31 August 2000. In the order, the trial court: (1) denied the motion to suppress the out-of-court identification of defendant by Mays; (2) granted defendant's motion to suppress the

in-court identification of defendant during the probable cause hearing; and (3) denied the motion to compel the State to reveal the identity of the informant and the motion to dismiss.

## III. Analysis

At the outset, we note that defendant has violated two Rules of Appellate Procedure. First, the record contains only four assignments of error while defendant's brief sets forth five arguments, the fifth of which does not correspond in substance to any of defendant's assignments of error. For this reason, we will not address defendant's fifth argument. *See* N.C. R. App. P. 10(a). Second, defendant has failed to comply with Rule 28(b)(5), which states that an appellate brief must set forth, immediately below each argument, the assignments of error that are pertinent to the argument. *See* N.C. R. App. P. 28(b)(6). This failure to observe the mandatory Rules of Appellate Procedure subjects an appeal to dismissal. *See, e.g., May v. City of Durham,* 136 N.C. App. 578, 581, 525 S.E.2d 223, 227 (2000). However, because defendant's first four arguments correspond to defendant's four assignments of error in the record, we elect to exercise the discretion accorded us by N.C. R. App. P. 2 to consider the merits of defendant's first four arguments. *See id.*

## A. Out-of-Court Identification of Defendant

[1] Defendant's first two assignments of error involve the trial court's denial of defendant's pre-trial motion to suppress the out-of-court "show-up" identification of defendant. Defendant contends his pre-trial motion to suppress the "show-up" identification should have been granted for two independent reasons. First, defendant contends that the State did not establish that there was reasonable suspicion to stop the car and detain defendant based upon the tip from the confidential informant because the State presented no evidence as to the basis of the informant's knowledge and because only minimal testimony was presented regarding the reliability of the informant. Second, defendant contends that the "show-up" identification procedure itself was impermissibly suggestive and created a substantial likelihood of misidentification because defendant was the only suspect presented to Mays and because he was surrounded by police officers and patrol cars with flashing lights. However, we need not address the merits of defendant's arguments regarding the trial court's denial of the pre-trial motion to suppress the out-of-court identification of defendant because defendant failed to object to the admission of this evidence at the time it was offered at trial.

Defendant's motion to suppress was made prior to trial and therefore constitutes a motion *in limine. See State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980) ("motion *in limine*" indicates that the motion, regardless of its type, was made prior to trial).

> Rulings by a trial court on motions *in limine* "are merely preliminary and subject to change during the course of trial, depending upon the actual evidence offered at trial." . . .
>
> Furthermore, an objection to an order granting or denying a motion *in limine* "is insufficient to preserve for appeal the question of the admissibility of evidence." In order to preserve the issue for appeal, "[a] party objecting to an order granting or denying a motion *in limine* . . . is required to object to the evidence at the time it is offered at the trial (where the motion was denied) or attempt to introduce the evidence at the trial (where the motion was granted)." Thus, when a party purports to appeal the granting or denying of a motion *in limine* following the entry of a final judgment, the issue on appeal is not actually whether the granting or denying of the motion *in limine* was error, as that issue is not appealable, but instead "whether the evidentiary rulings of the trial court, made during the trial, are error."

*State v. Locklear*, 145 N.C. App. 447, 452, 551 S.E.2d 196, 198-99 (2001) (citations and footnote omitted).

A review of the transcript of the trial reveals that defendant failed to object to the admission of evidence regarding the out-of-court identification of defendant. During the State's direct examination of its first witness, Mays, the following testimony transpired:

> A. I was in a police car with a female officer. . . . She asked me if it was the same man. And I told her that I could not see his face clearly, to please have him turn around. And she did. And they had him turn around.
>
> Q. And when he turned around, did you know whether or not this was the person?
>
> A. Yes, sir.
>
> Q. And was it the same person that you had seen earlier?
>
> A. Yes, sir, it was.

Defendant failed to object to this testimony. Similar testimony was offered by Officers Burgin and Davis later in the trial, also without

objection by defendant. Because defendant failed to object during the trial to the admission of evidence regarding the out-of-court identification, defendant has failed to preserve for our review the issue of whether this evidence was properly admitted at trial. Therefore, defendant's first two assignments of error are overruled.

### B. Identity of Informant

**[2]** Defendant's third and fourth assignments of error relate to the denial of defendant's pre-trial motion to compel the State to disclose the identity of the confidential informant. Defendant argues that the trial court erred in denying the motion to compel disclosure, and, further, that the trial court erred in denying defendant's motion to dismiss based upon the State's refusal to disclose the identity of the informant. We disagree.

We first note that, contrary to defendant's contention, N.C. Gen. Stat. § 15A-978 (1999) is inapplicable here. That statute addresses situations in which a defendant contends (1) that testimony relied upon *to establish probable cause for the issuance of a search warrant* was not truthful, and (2) that, as a result, the evidence seized pursuant to the search warrant should not be admitted at trial. *See id.* official commentary.

This case involves a tip from a confidential informant that is relied upon by the police as the basis for stopping and detaining a defendant. The legal principles relevant to our analysis are well-established by case law. "[T]he state is privileged to withhold from a defendant the identity of a confidential informant, with certain exceptions." *State v. Newkirk*, 73 N.C. App. 83, 85, 325 S.E.2d 518, 520, *disc. review denied*, 313 N.C. 608, 332 S.E.2d 81 (1985). One such exception arises ". . . '[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . . In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.' " *Id.* at 86, 325 S.E.2d at 520 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61, 1 L. Ed. 2d 639, 645 (1957)). In such situations, if the defendant is able to set forth a "plausible" showing as to the materiality of the informant's testimony, the trial court must then balance the public's interest against the defendant's right to present his case, " 'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " *Id.* (quoting *Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646).

"However, before the courts should even begin the balancing of competing interests which *Roviaro* envisions, a defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure." *State v. Watson*, 303 N.C. 533, 537, 279 S.E.2d 580, 582 (1981). Moreover, "[t]he privilege of nondisclosure . . . ordinarily applies where the informant is neither a participant in the offense, nor helps arrange its commission, but is a mere tipster who only supplies a lead to law enforcement officers." *State v. Grainger*, 60 N.C. App. 188, 190, 298 S.E.2d 203, 204 (1982), *disc. review denied*, 307 N.C. 579, 299 S.E.2d 648 (1983). Thus, a defendant who makes no defense on the merits, and who does not contend that the informant participated in or witnessed the alleged crime, has no constitutional right to discover the name of the informant. *State v. Ketchie*, 286 N.C. 387, 392, 211 S.E.2d 207, 211 (1975).

Here, defendant did not present any defense on the merits as to the charges against him. Nor has defendant ever contended that the confidential informant participated in, or witnessed, the crime. Because defendant has failed to make any showing that the particular circumstances of his case mandate disclosure of the identity of the informant, we affirm the trial court's denial of defendant's motion to compel disclosure of the informant's identity, as well as the trial court's denial of defendant's motion to dismiss. Defendant's third and fourth assignments of error are, accordingly, overruled.

No error.

Judges BRYANT and SMITH concur.