STATE OF NORTH CAROLINA v. KAWAME LLOYD MAYS, Defendant

No. COA01-1387

(Filed 1 July 2003)

### 1. Homicide— instructions—acquit first

An erroneous instruction that the jurors in a first-degree murder prosecution could consider second-degree murder only after they unanimously acquitted defendant of first-degree murder was harmless. The defendant in this case received the only relief to which he was entitled when the jury failed to convict and the court ordered a new trial. It is suggested that a jury expressing confusion be instructed to consider first the primary offense, then the lesser offense if reasonable efforts do not produce a verdict, and that a unanimous not guilty verdict for the primary offense is not required before consideration of the lesser offense.

### 2. Constitutional Law— double jeopardy—indictment after hung jury

A second indictment for murder did not violate double jeopardy where the first resulted in a hung jury. Although defendant argued that the first jury sent a note to the court that indicated unanimous agreement on second-degree murder, that note is open to interpretation and is not equivalent to a verdict.

### 3. Criminal Law— self-defense instruction—not given—harmless error

Any error in the court not giving an imperfect self-defense instruction was harmless where the court submitted first-degree murder based on both premeditation and deliberation and felony murder, second-degree murder, or not guilty, and the jury convicted defendant of first-degree murder based both on premeditation and deliberation and on felony murder.

### 4. Homicide— felony murder instruction—harmless error

Any error in submitting a felony murder instruction was harmless where defendant was found guilty of first-degree murder based upon both felony murder and premeditation and deliberation.

## 5. Evidence— motion in limine denied—no contemporaneous objection

The question of whether the State's cross-examination of a murder defendant was proper was considered by the Court of Appeals in its discretion, even though defendant did not lodge contemporaneous objections at trial after his motion in limine was denied.

## 6. Evidence— attack on correctional officers—admissible for willingness to attack officers

The admission of defendant's attack on correction officers was not improper in a prosecution for the first-degree murder of a police officer. The State was entitled to rebut defendant's assertions that he would not knowingly harm an officer and that he shot the police officer because he was mistaken about his identity.

## 7. Witnesses— defendant's witness called by State—not prejudicial

Any error in allowing the State to call an expert witness previously retained by defendant was harmless where the witness's testimony was tangential.

## 8. Homicide— first-degree murder—short-form indictment

A first-degree murder indictment was sufficient even though it did not set forth all elements of that crime.

Appeal by defendant from judgment entered 15 September 1998 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 7 January 2003.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell and Assistant Attorney General Robert C. Montgomery, for the State.*

*Center for Death Penalty Litigation, by Robert Manner Hurley, for defendant-appellant.*

GEER, Judge.

A jury found defendant Kawame Lloyd Mays guilty of first degree murder in a re-trial following the trial court's declaration of a mistrial. Defendant appeals, arguing that the trial court erred in various respects, including improperly instructing the jury in the first trial

that they could not consider the charge of second degree murder unless they had unanimously acquitted defendant of first degree murder, an instruction commonly called an "acquit first" instruction. We agree that the trial court erred in giving an "acquit first" instruction, but hold that defendant has already received the appropriate relief: a new trial with a properly instructed jury. As for defendant's other assignments of error, we find no prejudicial error.

On 4 August 1997, defendant was indicted for the murder of Raleigh Police Officer Paul Hale. On the same date, defendant was also separately indicted for the murder of Michael Walker. The two cases were joined and tried together at the 4 May 1998 criminal session of Wake County Superior Court with the Honorable Donald W. Stephens presiding. In the Walker case, the jury found defendant guilty of felony murder, but was unable to reach a unanimous decision as to sentence. The court therefore imposed a sentence of life without the possibility of parole. In the Hale case, Judge Stephens declared a mistrial based on the jury's inability to reach a unanimous verdict as to guilt or innocence.

The Hale case was re-tried at the 10 August 1998 criminal session of Wake County Superior Court with Judge Stephens again presiding. The jury found defendant guilty of first degree murder based on both premeditation and deliberation and felony murder. The jury was unable, however, to reach a unanimous verdict as to the sentence. On 15 September 1998, the trial court imposed a sentence of life without the possibility of parole.

From the judgment in the Hale case, defendant gave notice of appeal on 25 September 1998. The Walker case was the subject of a separate appeal in *State v. Mays*, 154 N.C. App. 572, 573 S.E.2d 202 (2002).

Facts

On 11 July 1997, defendant was sleeping at the apartment of an acquaintance, Linda Bass. Michael Walker first came by the apartment for a short time at 3:00 or 3:30 a.m. to smoke crack cocaine. He returned at 5:00 a.m., but Bass would not let him in because she was about to go to bed. Shortly afterwards, she heard a fight outside her apartment. Defendant was awakened by the noise and he and Bass went out onto her front porch.

Walker was being assaulted by a "couple of guys," but when Bass yelled, they stopped and ran down the street. Walker asked Bass to

walk him to his truck. Bass told him, "they're gone, you'll be all right." Walker stepped off Bass' porch and ran to his truck.

As Walker drove off in his truck, defendant started shooting at the back of the truck. Defendant testified that he did not have a reason to fire the gun and that he was not trying to shoot Walker. Bass testified that she asked defendant, "why did you do that, you don't know him. He didn't do anything to you." Defendant responded, "I'm sorry." Bass told defendant to go, but recommended that he leave by way of State Street.

At 8:30 or 9:00 a.m., defendant spoke to Chris Sanders on State Street. In response to defendant's question about the driver of the truck, Sanders told him that the driver had been killed. Defendant then got into a cab. Sanders walked to the crime scene, where officers were investigating Walker's death, and threw a piece of paper onto the ground in front of the officers. He had written on the paper that the person the police were looking for had just gotten into cab number 31.

When detectives interviewed the cab driver, he gave them a description of his passenger and said that he had dropped him off in the 700 block of East Lenoir Street. After learning that defendant's girlfriend lived at 727 East Lenoir Street, the police department set up surveillance around the apartments at that address in an attempt to apprehend defendant.

Raleigh Police Officers Paul Hale and Patrick Niemann, both drug and vice squad officers dressed in plain clothing, participated in the surveillance and were given a description of defendant. No arrest warrant had been issued; they were supposed to detain defendant in an investigative stop and call the officers of the major crimes unit to interview him. The officers drove to the surveillance area in an unmarked 1984 Subaru.

Defendant was in fact at his girlfriend's apartment. The stepmother of defendant's girlfriend, Rosie Williams, testified that at about 5:00 p.m., she was leaving the apartment and defendant asked her for a ride to the store. They walked to the parking lot with another daughter of Williams and got into a Suzuki owned by that daughter. Defendant climbed into the back seat while Williams sat in the driver's seat. The daughter went over to speak to a friend. While they waited for Williams's daughter, they saw another car drive into the parking lot and pull up behind them. Defendant testified that he

STATE v. MAYS

[158 N.C. App. 563 (2003)]

thought the men in the car were friends of Walker. Williams, however, testified that she heard defendant say, "[T]he police have just pulled up behind us."

The men in the car were Niemann and Hale. Niemann had spotted defendant and thought he might be their suspect. As the officers drove towards the parking lot, they saw defendant get into the backseat of the Suzuki. According to Niemann's testimony, the officers pulled into the parking lot behind the Suzuki, parked the car, put on their police ballcaps, and exited the car. Hale's cap had "police" written on it in big letters.

Niemann walked over to talk to two pedestrians (Williams' daughter and her friend). When Hale walked towards the Sukuzi, Niemann then moved to the rear of the car. Neither officer had drawn his gun. Niemann testified that he heard Hale tell defendant, "put your hands where I can see them." Both Williams and her daughter confirmed that they too heard Hale ask defendant to step out of the car and put his hands where Hale could see them.

As Williams attempted to look out of her rear window, she saw defendant pull a gun out from his pants. Then, as Hale approached the door on defendant's side of the Sukuzi, defendant leaned forward and shot him. The State's expert pathologist testified that defendant's gun was fired at a distance of three to six inches from Hale's face.

Defendant claimed that he shot Hale because he believed that Hale had a gun in his hand and was going to shoot him. Hale actually was holding a walkie-talkie. Defendant testified that he would never have shot Hale had he known he was a police officer.

Niemann heard the shot and saw Hale fall to the ground. He used the officers' Subaru for cover, fired several shots at defendant, and radioed for help. He saw a hand fling a black semiautomatic pistol, which had jammed, on the ground. Several officers, who were also participating in the surveillance, pulled defendant out of the Sukuzi. Various witnesses confirmed that defendant, who had also been shot, stated that he did not know Hale was a police officer. Both Hale and defendant were taken to Wake Medical Hospital, where Hale died several hours later.

I

[1] Defendant argues that the trial court erred in instructing the jurors that they could not consider whether defendant was guilty of

second degree murder unless they had first unanimously decided to acquit defendant of first degree murder. We agree with defendant, based on the plain language of N.C. Gen. Stat. § 15A-1237 (2001) and prior decisions of the North Carolina appellate courts. Nevertheless, defendant has already received the only relief to which he would be entitled: a new trial with a properly instructed jury.

During defendant's first trial, the jury foreman sent a note to the trial court that stated, "If we cannot unanimously agree on 1st degree murder under either legal theory, (for one of the cases) [a]nd we can unanimously agree that <u>minimally</u> the defendant is guilty of 2nd degree murder, <u>must</u> we conclude that he is guilty of 2nd degree murder." (Emphasis original) After the note was delivered to the trial court, but before the jury was brought back to the courtroom, the following discussion occurred:

> THE COURT: Of course as we all know and understand the law the jurors must unanimously agree on each potential verdict before they can make a decision about that verdict. That is to say, the jurors must unanimously agree that the defendant is guilty of murder in the first degree or they must unanimously agree that he is not. And until such time as they unanimously agree either way they do not address whether or not he's guilty of second degree murder.
>
> . . . .
>
> If my recollection of the legal principles involved are contrary to yours you need to tell me now. Mr. DA, is that your understanding?
>
> [PROSECUTOR]: That's my understanding of the law, your Honor. They must agree unanimously on the first charge before they can address other offenses and they would have to do it under both theories.
>
> . . . .
>
> [DEFENSE COUNSEL]: Your Honor, our position based on the note is that the Court should instruct them that they should return a verdict of second degree in the case, that they can unanimously agree that this is a second degree conviction and we request that the Court instruct the jurors as to that if they're unanimous on second degree.

The trial court denied defense counsel's request and instructed the jury: "You would not reach the question of whether or not the defendant is guilty of murder in the second degree until all twelve of you agree and are so satisfied that the answer[s] to the first two issues [whether defendant is guilty of premeditated murder or felony murder] are no and the State has failed to prove beyond a reasonable doubt the defendant is in fact guilty of murder in the first degree."

After receiving the supplemental instructions, the jury continued their deliberations, but subsequently sent a second note to the trial court, which read: "Upon careful discussion, we cannot unanimously agree yes to 1st degree murder in one case. We also cannot all 12 agree no to 1st degree murder in the same case. We do not believe that with any amount of further deliberation, this will change." The jury again asked: "Do we need 12 unanimous no votes to 1st degree murder before we consider 2nd degree murder?" Based on the jury's inability to reach a unanimous decision, the trial court declared a mistrial.

N.C. Gen. Stat. § 15A-1237 provides:

> (b) The verdict must be unanimous, and must be returned by the jury in open court.

> . . .

> (e) If there are two or more offenses for which the jury could return a verdict, it may return a verdict with respect to any offense, including a lesser included offense on which the judge charged, as to which it agrees.

Since in this case, there were "two or more offenses"—premeditated murder, felony murder, and second degree murder—"for which the jury could return a verdict," § 15A-1237(e) controls. The trial court's instruction requiring that the jury first acquit defendant of first degree murder before considering whether defendant was guilty of second degree murder cannot be reconciled with the plain language of N.C. Gen. Stat. § 15A-1237(e).

Under § 15A-1237(e) (emphasis added), the jury was permitted to "return a verdict with respect to *any* offense, including a lesser included offense on which the judge charged, as to which it agree[d]." Necessarily, because of the statute's specific reference to "a lesser included offense," the jury in this case was entitled to return a verdict of second degree murder if they all agreed. Nothing in the statute sup-

ports the trial court's added limitation that the juror was first required to acquit defendant as to first degree murder. The mandatory nature of the instruction is inconsistent with the permissive language of the statute.

In addition, the trial court's instruction has already been rejected by this Court in *State v. Sanders*, 81 N.C. App. 438, 344 S.E.2d 592, *disc. review denied*, 318 N.C. 419, 349 S.E.2d 604 (1986). In *Sanders*, defendant argued that the trial court improperly coerced the jury's verdict, pointing to the following discussion between the trial court and the jury foreman:

COURT: Okay. I assume you have not reached a verdict.

FOREMAN: Your Honor, we have a difference of understanding on that matter. It is my interpretation that we have but questions were raised and I need a clarification from you at that point and I had hoped before we came back out.

. . . .

FOREMAN: Your Honor, I understood your instructions to indicate that it was our task to take these options and in the light of the evidence presented in this Court and our common sense understanding of that agree on one of these four verdicts. There are several specifications in there and we discussed this in what we all thought was orderly manner and we agree unanimously on one of these options.

Then there was the interpretation advanced that we had to be unanimous in every detail. Obviously we were not unanimous in one of the details.

And so then there was the notion that we were not unanimous in our agreement because we choose—we did not choose the first one, the unanimity was on another option.

COURT: On the option that you ultimately select, any one of the four, you must be unanimous.

FOREMAN: Yes, sir. That was my interpretation but I was not able to convince all members that that was the end of it, that any misgivings about any other point were automatically dropped once you have unanimity on that.

COURT: That's correct.

*Sanders*, 81 N.C. App. at 440-41, 344 S.E.2d at 593. In addressing this colloquy, the *Sanders* Court stated:

> It is readily apparent from the colloquy between the court and the jury foreman in the jury's presence that the jury was not unanimous as to the "first option," the indicted offense, and that some members of the jury believed that to reject that "option" required a unanimous vote. The court correctly agreed with the foreman that this was not a proper interpretation, and correctly instructed the jury that its decision on any one of the four options (including not guilty) must be unanimous. . . . The jury had already agreed unanimously on a lesser offense, and simply was confused as to whether their rejection of the greater offense had to be unanimous. The court instructed them correctly as to their duty.

*Sanders*, 81 N.C. App. at 442, 344 S.E.2d at 594. The reasoning articulated in *Sanders* fits squarely within the language of N.C. Gen. Stat. § 15A-1237(e).

In arguing that this Court should not follow *Sanders*, the State relies on *State v. Wall*, 9 N.C. App. 22, 175 S.E.2d 310 (1970), *State v. Wilkins*, 34 N.C. App. 392, 238 S.E.2d 659, *disc. review denied*, 294 N.C. 187, 241 S.E.2d 516 (1977), *State v. Booker*, 306 N.C. 302, 293 S.E.2d 78 (1982), and *State v. Felton*, 330 N.C. 619, 412 S.E.2d 344 (1992), *overruled on other grounds*, *State v. Jackson*, 348 N.C. 644, 503 S.E.2d 101 (1998), for the proposition that North Carolina is an "acquittal first" state. We disagree.

*State v. Wall* was authored prior to the adoption of N.C. Gen. Stat. § 15A-1237(e) and, therefore, is not instructive on how this Court should interpret and apply that statute. In fact, the *Wall* decision was grounded on the lack of authority to support the jury's having "the unbridled right to consider each offense separately and in any order they see fit." *Id.* at 24, 175 S.E.2d at 311. N.C. Gen. Stat. § 15A-1237(e) supplies that authority. *State v. Wilkins*, while authored in the same year as the adoption of the statute, relied solely on *Wall* and did not address the language of the statute. Neither *State v. Booker* nor *State v. Felton* addressed § 15A-1237(e) or specifically considered whether a trial court is required to instruct the jury that it must acquit defendant of the indicted offense before considering the lesser included offenses. None of these decisions require this Court to disregard the plain language of N.C. Gen. Stat. § 15A-1237(e) or *Sanders*.

In addition, the approach adopted here is consistent with North Carolina Supreme Court decisions regarding instructions on lesser included offenses. In *State v. Thomas*, 325 N.C. 583, 599, 386 S.E.2d 555, 564 (1989), the Supreme Court discussed the importance "of permitting the jury to find a defendant guilty of a lesser included offense supported by the evidence . . . ." As the Court explained, "[i]t aids the prosecution when its proof may not be persuasive on some element of the greater offense, and it is beneficial to the defendant 'because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal.' " *Id.* (quoting *Beck v. Alabama*, 447 U.S. 625, 633, 65 L. Ed. 2d 392, 400 (1980)). The Court expressed its primary concern that

> in a case in which "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction" despite the existing doubt, because "the jury was presented with only two options: convicting the defendant . . . or acquitting him outright."

*Id.* (quoting *Keeble v. United States*, 412 U.S. 205, 212-13, 36 L. Ed. 2d 844, 850 (1973)) (emphasis in *Keeble*).

In *Thomas*, the Court concluded that since the evidence all pointed to some criminal culpability on defendant's part, "[i]t was important, therefore, that the jury be permitted to consider whether defendant was guilty of the lesser included offense of involuntary manslaughter and not be forced to choose between guilty as charged or not guilty." *Id.* The error in failing to instruct on a lesser included offense is not cured by a unanimous verdict of guilty on the greater charge because "the jury might well have found the accused to be guilty of the lesser offense rather than the greater." *State v. Pearce*, 296 N.C. 281, 294, 250 S.E.2d 640, 649 (1979).

These principles still have force when a jury is instructed in how it should proceed in considering the offenses charged. While in this case, the jury was not forced to choose between guilty or not guilty, it was effectively restricted to a choice of guilty of first degree murder or a hung jury, an equally unpalatable choice for a jury convinced that the defendant is guilty of some criminal conduct. The trial court's instruction below required a juror not persuaded of first degree murder to choose between overriding his or her own true beliefs or leaving the case unresolved with no guarantee that the defendant will ultimately be punished. Precisely in order to avoid

STATE v. MAYS

[158 N.C. App. 563 (2003)]

such coercion, the Ohio Supreme Court has rejected an "acquittal first" instruction:

> Although the risk of coerced decisions may be present in any jury deliberation, we agree with the Oregon Supreme Court that the "acquittal first" instruction exacerbates such risk. "When the jury is instructed in accordance with the 'acquittal first' instruction, a juror voting in the minority probably is limited to three options upon deadlock: (1) try to persuade the majority to change its opinion; (2) change his or her vote; or (3) hold out and create a hung jury." . . . Because of its potential for a coerced verdict, the "acquittal first" instruction is improper and may not be charged to a jury in this state.

*State v. Thomas*, 40 Ohio St. 3d 213, 219-20, 533 N.E.2d 286, 292 (1988) (quoting *State v. Allen*, 301 Or. 35, 39, 717 P.2d 1178, 1180 (1986)), *cert. denied*, 493 U.S. 826, 107 L. Ed. 2d 54 (1989). *See also Allen*, 301 Or. at 40, 717 P.2d at 1181 (noting that jury studies "demonstrate that the 'acquittal first' instruction exacerbates the risk of coerced decisions . . .").

An "acquittal first" instruction, such as was used here, also dilutes the jury's freedom of decision that our State's lesser-included-offense jurisprudence has so carefully guarded. If, in the face of a unanimous guilty verdict on the indicted offense, our courts are still required to remand for a new trial simply so that a jury will be able to consider all lesser included offenses supported by the evidence, an instruction that then effectively bars the jury from considering the lesser included offenses cannot be permitted. *See State v. Sawyer*, 227 Conn. 566, 594, 630 A.2d 1064, 1078 (1993) (Katz, J., dissenting) ("Although juries are often instructed on lesser included offenses, the majority's imposition of the acquittal first rule effectively prohibits them from actually considering the lesser included offenses.").

The appropriateness of an "acquittal first" instruction has been debated across the country. Those states requiring such instructions do so either because it is mandated by statute or because of their fear that any other instruction could lead to compromise verdicts. *See, e.g., State v. Raudebaugh*, 124 Idaho 758, 761, 864 P.2d 596, 599 (1993) (Idaho Code § 19-2132(c) forbids a jury from considering lesser included offenses until after it has found the defendant not guilty of each greater offense); *People v. Boettcher*, 69 N.Y.2d 174, 183, 505 N.E.2d 594, 597 (1987) (expressing concern about compromise ver-

dicts). Other states, as a matter of policy, reject an "acquittal first" instruction because they are more concerned about the instruction's coercive effect and the possible increase in hung juries:

> We believe the "reasonable efforts" procedure is superior to the acquittal-first requirement for a number of reasons. First, it reduces the risks of false unanimity and coerced verdicts. When jurors harbor a doubt as to guilt on the greater offense but are convinced the defendant is culpable to a lesser degree, they may be more apt to vote for conviction on the principal charge out of fear that to do otherwise would permit a guilty person to go free. The "reasonable efforts" approach also diminishes the likelihood of a hung jury, and the significant costs of retrial, by providing options that enable the fact finder to better gauge the fit between the state's proof and the offenses being considered.

*State v. LeBlanc*, 186 Ariz. 437, 438-39, 924 P.2d 441, 442-43 (1996) (en banc) (citations omitted). *Accord State v. Labanowski*, 117 Wn. 2d 405, 420, 816 P.2d 26, 34 (1991) (en banc).

While the latter group of states' analysis fits more closely with the jurisprudence of this State,[1] we do not need to make that policy determination. That decision was already made by our General Assembly in adopting N.C. Gen. Stat. § 15A-1237(e) and we, as a court, are not free to revisit the question.

The approach that we believe § 15A-1237(e) mandates is consistent with the current pattern jury instructions. For example, in 1 N.C.P.I.—Crim. 206.11 (2002) (emphasis added), a jury is instructed:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant intentionally but not in self-defense, killed the victim thereby proximately causing the victim's death and that the defendant acted with malice, with premeditation, and with deliberation, it would be your duty to return a verdict of guilty of first degree murder. *If you do not so find or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of first degree murder.*

---

1. *See State v. Alston*, 294 N.C. 577, 592-93, 243 S.E.2d 354, 364 (1978) ("[O]ur Court has solidly established certain rules for our guidance, *e.g.*, a trial judge has no right to coerce a verdict, and a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous.").

*If you do not find the defendant guilty of first degree murder, you must determine whether he is guilty of second degree murder.*

This instruction simply directs a jury to consider the primary charge first before continuing onto the lesser included offense. It does not mandate that the jury unanimously find the defendant not guilty with respect to first degree murder before turning to second degree murder. *See State v. Gardner,* 789 P.2d 273, 284 (Utah 1989) (although rejecting an "acquittal first" instruction, approving an instruction that permitted the jury to consider the lesser included offenses "if they do not find the defendant guilty of the charged offense"), *cert. denied,* 494 U.S. 1090, 108 L. Ed. 2d 965 (1990).

If, however, as occurred below and in *Sanders,* a jury expresses confusion regarding its responsibilities, then we suggest that the trial court give a "reasonable efforts" instruction similar to the one that has been adopted in a number of other jurisdictions: (1) that the jury should first consider the primary offense, but it is not required to determine unanimously that the defendant is not guilty of that offense before it may consider a lesser included offense; and (2) that if the jury's verdict as to the primary offense is not guilty, or if, after all reasonable efforts, the jury is unable to reach a verdict as to that offense, then it may consider whether the defendant is guilty of the lesser included offense.

Although we agree with defendant that the trial court erred in giving an "acquit first" instruction, this error was harmless. When a trial court erroneously instructs a jury, the proper relief on appeal is the granting of a new trial. *State v. Millsaps,* 356 N.C. 556, 569, 572 S.E.2d 767, 776 (2002) ("Ordinarily a trial error committed in jury instructions would warrant a new trial on the issue affected by the instructions.") (quoting *State v. Blakenship,* 337 N.C. 543, 563, 447 S.E.2d 727, 739 (1994)). Here, after the erroneous instruction, the jury failed to convict defendant and the trial court ordered a new trial. Defendant has not contended that the jury was improperly instructed on this issue in the second trial. Defendant has thus already obtained the only relief to which he is entitled.

Although defendant argues that an appropriate remedy would be to mandate that the trial court accept the jury's verdict of second degree murder, the jury never rendered a verdict of second degree murder in the first trial. Defendant points to the jury's note stating "we can unanimously agree that <u>minimally</u> the defendant is guilty of

2nd degree murder . . . ." (Emphasis original) The Supreme Court has already held that such a note does not constitute a verdict. *Booker*, 306 N.C. at 304, 293 S.E.2d at 79. In addition, we stress that while the jury was *permitted*, under N.C. Gen. Stat. § 15A-1237(e), to render a verdict as to second degree murder, it was not *required* to do so. A properly instructed jury might still have been unable to agree on a second degree murder verdict.

We therefore hold that the trial court's erroneous instructions have not harmed defendant as he has already received relief in the form of a new trial with a properly instructed jury.

## II

[2] Second, defendant argues that the trial court erred in denying his motion to dismiss the second indictment based on double jeopardy. Specifically, defendant argues that it was double jeopardy to again indict defendant for first degree murder, when, in light of the jury's note to the trial court, the jury in the first trial must have found defendant guilty of second degree murder for the same charge. We disagree.

As stated above, the jury in the first trial never rendered a verdict of second degree murder. Defendant argues that the jury's first note was indicative of their unanimous agreement on the verdict of second degree murder. This note, however, is open to various interpretations and is not equivalent to a verdict. Because there was no final verdict, there can be no double jeopardy. *Booker*, 306 N.C. at 307, 293 S.E.2d at 81 (because the jury only sent a note, the jury did not return a final verdict and there was no double jeopardy).

In addition, it is well-established that "[n]ormally, 'a retrial following a "hung jury" does not violate the Double Jeopardy Clause.' " *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109, 154 L. Ed. 2d 588, 597 (2003) (quoting *Richardson v. United States*, 468 U.S. 317, 324, 82 L. Ed. 2d 242 (1984)). *See also Booker*, 306 N.C. at 304, 293 S.E.2d at 79 ("The general rule in North Carolina is that an order of mistrial will not support a plea of former jeopardy."). Since only an order of mistrial exists and there was no verdict, this assignment of error is overruled.

## III

[3] Third, defendant argues that the trial court erred in denying his request for an imperfect self-defense jury instruction. As defendant

acknowledges, the purpose of an instruction on imperfect self-defense is to permit a jury to find the defendant guilty of voluntary manslaughter. *State v. Norris*, 303 N.C. 526, 532, 279 S.E.2d 570, 574 (1981). Even if the evidence supported the requested instruction, the failure of the trial court to give the instruction was harmless.

In this case, the trial court instructed the jury that it had three choices: first degree murder (including both felony murder and pre-meditation and deliberation), second degree murder, or not guilty. The jury found defendant guilty of first degree murder based on both premeditation and deliberation and felony murder. Our Supreme Court has held: "[W]hen the trial court submits to the jury the possible verdicts of first-degree murder based on premeditation and deliberation, second-degree murder, and not guilty, a verdict of first-degree murder based on premeditation and deliberation *renders harmless the trial court's improper failure to submit voluntary or involuntary manslaughter.*" *State v. Price*, 344 N.C. 583, 590, 476 S.E.2d 317, 321 (1996) (emphasis added). *See also State v. Reid*, 335 N.C. 647, 672-73, 440 S.E.2d 776, 790 (1994) (any error as to imperfect self-defense instruction was harmless because jury found defendant guilty of first degree murder based on premeditation and deliberation); *State v. Potter*, 295 N.C. 126, 145-46, 244 S.E.2d 397, 410 (1978) (same). This assignment of error is overruled.

IV

**[4]** Defendant next argues that the trial court erred in submitting a felony murder jury instruction when that instruction was not supported by the evidence produced at trial. Even assuming defendant is correct and felony murder should not have been submitted to the jury, defendant suffered no harm.

The Supreme Court has held that any error in allowing a jury to consider felony murder does not require a new trial if the jury also found the defendant guilty based on premeditation and deliberation. *State v. McLemore*, 343 N.C. 240, 249, 470 S.E.2d 2, 7 (1996) ("[Defendant] was found guilty based on the felony murder rule and on the theory of premeditation and deliberation. . . . Although the defendant should not have been convicted of felony murder, the verdict cannot be disturbed if the evidence supports a conviction based on premeditation and deliberation."). Since defendant was found guilty of first degree murder based on both the theories of premeditation and deliberation and felony murder, any error in submitting the felony murder instruction was harmless.

V

**[5]** Fifth, defendant argues that the trial court erred in denying his motion *in limine* to prohibit the State from cross-examining defendant regarding disciplinary infractions arising out of an alleged assault on correctional officers while he was incarcerated. The actual issue to be decided is not whether the motion *in limine* should have been granted, but rather whether the evidence was properly admitted at trial:

> "[W]hen a party purports to appeal the granting or denying of a motion *in limine* following the entry of a final judgment, the issue on appeal is not actually whether the granting or denying of the motion *in limine* was error, as that issue is not appealable, but instead 'whether the evidentiary rulings of the trial court, made during the trial, are error.' "

*State v. Gaither*, 148 N.C. App. 534, 539, 559 S.E.2d 212, 215-16 (2002) (quoting *State v. Locklear*, 145 N.C. App. 447, 452, 551 S.E.2d 196, 198-99 (2001)) (citations omitted). Defendant has not properly preserved this issue for appeal.

When a motion *in limine* has been denied and when the contested evidence is then offered at trial, the party opposing admission of the evidence must renew his objection at trial to preserve the issue for appellate review. Even if the trial court allows the party a standing objection, the party is not relieved of his obligation to make a contemporaneous objection. *State v. Gray*, 137 N.C. App. 345, 348, 528 S.E.2d 46, 48 (issue of admissibility of evidence not preserved for appeal even though trial court granted defendant's motion for a standing objection), *disc. review denied*, 352 N.C. 594, 544 S.E.2d 792 (2000). Because defendant did not lodge contemporaneous objections, but relied upon a standing objection, *Gray* requires us to conclude that this issue was not preserved for review. Additionally, defendant has not argued that the admission constitutes plain error. We elect, however, to exercise our discretionary powers under N.C.R. App. P. 2 and address this issue.

**[6]** During the cross-examination, the prosecutor asked defendant a series of questions regarding whether he had attempted to assault correctional officers with a lock. In denying any assault, defendant claimed that the correctional officers beat him up and then fabricated the story that he had attempted to assault them. Defendant argues that these questions were improper, relying solely on Rules 608 and

609 of the North Carolina Rules of Evidence. The State responds that the evidence was in any event admissible under Rule 404(b).

It is well-established that evidence inadmissible under Rules 608 and 609 may still be admissible under Rule 404(b). *See, e.g., State v. Wilkerson,* 148 N.C. App. 310, 323, 559 S.E.2d 5, 13 (Wynn, J., dissenting), *adopted per curiam,* 357 N.C. 418, 571 S.E.2d 583 (2002) ("Thus, evidence eliciting details of acts that formed the basis of prior convictions may be elicited under Rule 404(b) even though such evidence may be barred under Rule 609."); *State v. Barnett,* 141 N.C. App. 378, 389, 540 S.E.2d 423, 430 (2000) ("[T]hat the evidence could not be admitted pursuant to Rule 609(a) does not preclude its admission under [Rule 404(b)]."), *aff'd,* 354 N.C. 350, 554 S.E.2d 664 (2001); N.C. Gen. Stat. § 8C-1, Rule 608 Commentary (2001) ("Evidence of wrongful acts admissible under Rule 404(b) is not within this rule and is admissible by extrinsic evidence or by cross-examination of any witness."). We believe the State's questions were proper under N.C. Gen. Stat. § 8C-1, Rule 404(b) (2001).

Under Rule 404(b) of the Rules of Evidence,

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

As the Supreme Court has emphasized, Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey,* 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis original).

In this case, defendant testified repeatedly that he would not have shot Hale if he had known that he was a police officer: "If I would have known he was a police officer I never would have shot the gun, sir." In other words, defendant contended he shot Hale because he was mistaken about Hale's identity and that he would not have knowingly harmed a law enforcement officer. The State was entitled to rebut this claim by suggesting that defendant had knowingly assaulted law enforcement officers on another occasion. *See*

*Young v. Rabideau,* 821 F.2d 373, 380 (7th Cir.) (evidence of inmate's assaults on correctional officers admissible under Rule 404(b) to negate inmate's claim that he had acted accidentally or in self-defense in confrontation with a correctional officer), *cert. denied,* 484 U.S. 915, 98 L. Ed. 2d 221 (1987). This assignment of error is overruled.

## VI

**[7]** In his next assignment of error, defendant contends that the trial court erred in allowing the State to call as an expert witness the same expert witness previously retained by defendant, citing *State v. Dunn,* 154 N.C. App. 1, 571 S.E.2d 650 (2002), *disc. review denied,* 356 N.C. 685, 578 S.E.2d 314 (2003). The State argues that *Dunn* is distinguishable. We do not need to reach this issue since we find that any error was harmless beyond a reasonable doubt.

Prior to trial, defendant obtained an *ex parte* order from the trial judge authorizing defense counsel to retain the expert services of Anita Matthews, a serologist employed by Lab Corp, to test Hale's police ballcap for blood. The presence or absence of blood on the cap was relevant to the question whether Hale was wearing his cap when shot. After consulting with Matthews, defendant decided not to call her as a witness. Unbeknownst to defendant, however, the State had subsequently also employed Matthews to test the cap for blood.

The trial court allowed Matthews to testify over defendant's objection on the grounds that she conducted separate tests for defendant and the State and she had not disclosed the results of the defense tests to the district attorney. The trial court prohibited any testimony regarding Matthews' employment by defendant or the tests she had conducted for defendant.

Matthews' testimony addressed an issue that ultimately proved to be tangential. She testified only that she had found the presence of blood on Hale's police ballcap, thus suggesting that Hale was wearing his police ballcap at the time he was shot. This fact was relevant only to the question whether defendant knew that Hale was a police officer when he shot him. That question in turn relates only to the charge of felony murder. Since the jury also found defendant guilty of first degree murder based on premeditation and deliberation, and Hale's status as a police officer was irrelevant to that

charge, we believe the admission of Matthews' testimony was harmless beyond a reasonable doubt.[2]

VII

**[8]** Finally, defendant argues that the trial court erred in denying defendant's motion to dismiss the indictment on the grounds that it failed to set forth each element of first degree murder. Defendant's argument fails in light of our Supreme Court's ruling in *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797, (2001). *See also State v. Anderson*, 355 N.C. 136, 148-49, 558 S.E.2d 87, 96 (2002); *State v. Long*, 354 N.C. 534, 543, 557 S.E.2d 89, 95 (2001).

No Error.

Judges WYNN and BRYANT concur.

---

2. Additionally, the State presented testimony from a number of eye witnesses that Hale was wearing a ballcap and the ballcap was ultimately found next to Hale's head on the ground.