Nash, J.
 

 The prisoner complains, that his Honor ought to have instructed the jury, that the provocation received by him was a legal one, and reduced the homicide, from murder to manslaughter. When the testimony, actually given to the jury, is separated from the suggestions of his counsel, of what might have taken place, the insufficiency of this defence is apparent. In his argument in the court below, the counsel for the prisoner insisted, that from the testimony of Connipe and Collins *' the deceased had not only caught the prisoner by the
 
 *411
 
 shoulder, as stated by his son, but had used other violence tohispei’son by jerking him down.” Of this additional violence, in jerking the prisoner down, no witness spoke. Collins himself, the son of the prisoner, saw nothing of it, nor did any other witness. It was, therefore, a mere assumption on the part of the counsel, forming no part of the evidence, and could not be taken into consideration, as, in any respect, qualifying the homicide. His Honor, in charging upon this portion of the defence, stated to the jury that they must be satisfied, from the testimony of Collins, taken in connection with other testimony in the case, that the deceased used more violence than that stated by the witness Collins, that the jury must be satisfied that the deceased had jerked the prisoner down, as-contended for by the prisoner’s counsel. In submiting to the jury an inquiry as to the existence of this alleged fact, his Honor went further, than in strictness he was bound to do, in favor of the prisoner. It is never the duty of a Judge to charge a jury upon afact, purely hypothetical; if he does, it is an error, which can and will be corrected, if it act to the injury of the accused, and against -which the Judge ought to guard, as it is irremediable if calculated to prejudice the prosecution.
 
 Benton’s case, 2
 
 Dev. & Bat. 169. It
 
 toas
 
 a mere assumption of a fact, upon the part of the defence, entirely unsupported by any ev. idence whatever.
 

 The catching the prisoner by the shoulder by the deceased was, under the testimony in the case, no assault. It is not stated by any witness, to have been done in a rude and angry manner. The language of Collins is, that when the deceased came up to the prisoner “he
 
 took
 
 him by the shoulder,” not that he
 
 caught
 
 him. It does not appear that the witness considered it any violence, nor that the prisoner did, for according to the statement of the son, the parties “stood side by side for three or four minutes,” during which time, and during the time, it took the witness to walk eight or ten steps, he does not testify
 
 *412
 
 to hearing any angry words, or any scuffling whatever. The subsequent instruction upon this part of the case, that the fact of "jerking down” need not be distinctly proved, but might be taken “for true, from other facts and circumstances proved” was, as a general proposition, true, but had no application to the cause before the jury ; there were no such “facts and circumstances” proved, as to authorise the jury to draw any such inference, or to justify the leaving the question to them.
 

 We think his Honor, also, from tenderness to the prisoner, erred in his charge, as to the nature of the instrument used by the prisoner. It is submitted to the jury, as a question of fact, whether a knife,.two inches and a half long, was a deadly weapon, and in describing to them what a deadly weapon is, he told them, if they thought the knife, used by the prisoner, was not, in his hands, a deadly weapon, then the homicide was manslaughter ; but if they thought, as used by the prisoner, it was calculated to inflict a mortal or a
 
 dangerous
 
 wound, the killing in the absence of a legal provocation, was murder. We agree with his Honor as to the nature of a deadly weapon. The latter part of the definition is not such as is usual. It is generally described by writers, as a weapon likely to produce death or great bodily harm. There are no precise terms, however, appropriated
 
 in the
 
 law, to the description of such an instrument; it must be shown to be one capable of producing the effects described. No one can doubt, but that a dangerous wound is a great bodily injury or harm. The description, therefore, given in the charge was correct. The error of his Honor consisted in leaving that to the jury, as a question of fact, which is strictly one of law. This is decided in
 
 Croton’s case, 6
 
 Ire.
 
 185. The
 
 Court in speaking upon the point now before us says: “If the instruction had been prayed in reference to doubt about the instrument being a deadly weapon, as we conceive, the Court ought not to have given, it to the jury.” Whether the instru-
 
 *413
 
 xnent used was such as is described by the witnesses, where it zs not produced, 01% if, produced, whether it was the one used, are questions of fact, but, these ascertained, its character is pronounced by the law; his Honor’s error consisted in leaving the latter questions to the jury. But though in the charge, upon the points we have noticed, there was'error, it was not such an one as‘"was calculated to do the prisoner any injury. On the contrary, it gave him the full benefit of a defence, which did not arise in the case, in the one instance, and left to the jury in the other, as a matter' to be found by them, a question, which the law had pronounced against; him, in the other. In neither case, then, has he a right to complain, and of course no right to a
 
 venire de novo. State
 
 v.
 
 Swinke, 2
 
 Dev. & Bat. 9.
 
 Reid
 
 v.
 
 Moore,
 
 3 Ire. 310.
 

 The prisoner has before us further moved to arrest the judgment and assigned the following reasons: First, because it does not appear from the record, that the bill of indictment had been sent from the Court to the grand jury or how they got it into possession; Secondly, that it does not appear, that the prisoner was present in Court during the trial. As to the first objection, if it could be taken in this form, we should not think it sufficient. Upon the back of the bill of indictment is the following endorsement: “State
 
 v.
 
 John Collins, murderer. Calvin Gardin, James Ingles and others, witnesses, sworn,
 
 sent
 
 and bound. S. B. Erwin, C. S. C. L. A true bill. D. Glass, foreman.” Fi’om this endorsement it appears, that the witnesses in behalf of the State were sworn in Court and sent to the grand jury, with their names endorsed as having been so sworn upon that bill. This sufficiently shows, that the bill was sent to the grand jury by the Court. The second objection is equally unavailing to the prisoner. It is very certain, that it is essential to the legal trial of a man upon a charge of life and death, that, he should be present, to avail himself of any objection that might oc'cur
 
 *414
 
 on the trial, and to confront the prosecutor and witnesses against him.
 
 llh sec. of the Bill of rights.
 

 The question here, however, is not whether the prisoner was entitled to be so present, but whether it sufficiently appears on the record that he was present. The record does not set forth, with that fullness it might have done and such as is usual, what did occur on the trial. But “it is sufficient, if it be certain, to a certain intent, in general; it is not necessary that it should be certain, to a certain intent in ever3r particular, so as absolutely to exclude every possible conclusion, all argument, presumption or inference against it.” This is the language of the Court in
 
 Christmas's case,
 
 4 Dev. & Bat. 413. The record in this case shows, in language sufficiently intelligible, that the prisoner was present at the conclusion of the trial. It states the names of the jurors who were sworn and charged to try the case ; it then proceeds, who find :
 
 “John Collins, the prisoner at the bar,
 
 guilty,” &c. It is answered on the part of the prisoner that this does not ascertain with sufficient certainty his presence during the trial.
 

 Under the rule laid down in the case of Christmas we think it does; and that we are bound, from it, to believe that he was present during the trial.
 
 Croton's case
 
 is an authority on this point. The language of the Court in that case is: “But although it is the more correct that the presence of the accused should be expressly affirmed, yet we conceive, it is sufficient, if it appear by a necessary or reasonable implication, 6.
 
 Ire.
 
 169. In this case the accused is called by the jury, in their verdict, the prisoner at the bar, and the clerk, in recording it, calls him the prisoner at the bar. It would be too violent a supposition, that he had been brought to the bar simply to hear the verdict pronounced, when his right to be present the -whole time is secured to him by the fundamental law of the country; and when such is the uniform practice, if not a necessary, it is a reasonable implica
 
 *415
 
 iion, that such was the fact and we so understand it. It has however been argued before us that the expression, the prisoner at the bar, is satisfied, by his being in the custody of the sheriff. The prisoner, it is true, is in the custody of the sheriff after his arrest, until duly discharged, unless he escape, but the term the prisoner “ at the bar," is used to designate
 
 where
 
 he is in his custody, to wit, at the bar, in the presence of the court and jury.
 

 We cannot disturb the verdict, nor arrest the judgement ; therefore this must be certified to the Superior' Court of McDowell county, that other proceedings may be had on the conviction according to due course of law.
 

 Per Curiam. Ordered to be certified accordingly*