STATE OF NORTH CAROLINA v. RANDY PAUL SMALLWOOD

No. 856SC593

(Filed 17 December 1985)

1. **Robbery § 1.2— no dangerous weapon as a matter of law—submission of common law robbery required**

   It is error to refuse to submit common law robbery to the jury where the evidence does not compel a finding that the weapon allegedly used is a dangerous weapon as a matter of law.

2. **Robbery § 1.1— armed robbery—knife as dangerous weapon**

   Whether a knife is a dangerous weapon depends upon the circumstances of the case, including the extent of the threat to the victim, the physical stature of the knife wielder, the weakened state of the victim, and whether or not and to what extent the victim was actually injured.

3. **Robbery § 1.1— armed robbery—knife as dangerous weapon—jury question**

   Where the victim has in fact suffered serious bodily injury or death, the courts have consistently held that a knife is a dangerous or deadly weapon *per se* absent production or detailed description; however, in cases where the knife has not been produced or described in detail and the victim has not suffered

injury or death, the question of whether a knife is a dangerous weapon is generally for the jury.

**4. Robbery § 4.3— armed robbery—knife as dangerous weapon—sufficiency of evidence**

Defendant's motion to dismiss in an armed robbery case for failure to show that a knife was a dangerous weapon was properly overruled since eyewitness testimony of the victim that defendant held a knife to his throat and robbed him established all elements of the crime and was sufficient to go to the jury.

**5. Robbery § 5.4— armed robbery charged—weapon not produced—failure to submit common law robbery error**

The trial court in an armed robbery case erred in refusing to submit common law robbery to the jury where the knife allegedly used during the crime was never produced; according to the victim, the knife was drawn and put right to his throat, and defendant ran as soon as he had the victim's money; according to an eyewitness, defendant and the victim were together for some time, and defendant had a knife but was holding it down by his side rather than at the victim's throat when the witness saw him; and there was therefore some evidence of the nonexistence of the element of danger to life.

**6. Robbery § 5— armed robbery—alibi evidence—instructions required**

There was no merit to the State's contention that, because defendant presented alibi evidence, the only choice was between armed robbery and not guilty.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 14 January 1985 in Superior Court, HERTFORD County. Heard in the Court of Appeals 24 October 1985.

This is an armed robbery case.

The State's evidence tended to show the following: The victim and several of his friends drove into Ahoskie, where they drank beer, rode around, and talked to a girl. The girl drank beer with them, and suggested they go to an after-hours cafe to buy more. Defendant approached the victim outside the cafe and offered to sell him some dope. Victim refused and went in to buy beer, defendant following. Victim and the girl walked down a hallway into the back of the cafe, then turned and came out. As the victim came up the hallway to the front of the cafe, defendant shoved the door shut in front of him. According to the victim, defendant held a knife to his throat, reached into victim's pocket, took his cash, turned and ran. Another State's witness, Gatling, testified that he came into the hall during the holdup and that defendant had the knife in his hand but down by his side. Gatling

provided the only description of the knife, that it was "approximately that long"; no knife was introduced into evidence. The victim left after the robbery and returned firing a gun. When police arrested him, he told them of the robbery.

Defendant's cross examination evidence tended to show that the State's witnesses made up the robbery story to divert attention from their association with prostitution, drugs, and other crime. Defendant also presented alibi evidence.

The jury considered issues of guilty of armed robbery or not guilty; defendant's request for submission of common law robbery was denied. The jury found defendant guilty. From a sentence in excess of the presumptive, defendant appeals.

*Attorney General Thornburg, by Assistant Attorney General George W. Lennon, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Geoffrey C. Mangum, for the defendant.*

EAGLES, Judge.

Of the four assignments argued, three relate to whether the knife used was a dangerous weapon. We conclude that because the evidence supported, but did not compel, a finding that the knife used was a dangerous weapon and there was no instruction on common law robbery, defendant is entitled to a new trial.

I

[1] One of the elements of armed robbery is that the accused used or threatened to use a firearm or other dangerous weapon. G.S. 14-87(a). In fact, the courts have characterized the use of a dangerous weapon as the main element of the offense. *See State v. Beaty,* 306 N.C. 491, 293 S.E. 2d 760 (1982). Common law robbery is distinguished from armed robbery by the absence of this element, *State v. Stewart,* 255 N.C. 571, 122 S.E. 2d 355 (1961). Common law robbery is accordingly a lesser included offense of armed robbery. *State v. Ross,* 268 N.C. 282, 150 S.E. 2d 421 (1966) (per curiam). It is error to refuse to submit common law robbery to the jury where the evidence does not compel a finding that the weapon allegedly used is a dangerous weapon as a matter of law. *Id.*

A

Although the foregoing general principles seem reasonably straightforward, the case law regarding knives as dangerous weapons gives rise to a certain amount of confusion. Both sides cite cases which appear to support their position. In *State v. Sturdivant*, 304 N.C. 293, 283 S.E. 2d 719 (1981), Justice Copeland reviewed some of the apparently conflicting cases involving knives, but did not resolve them. He summarized the law thus: "[T]he evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death." *Id.* at 301, 283 S.E. 2d at 726.

We note that *Sturdivant*, a rape case, involved the definition of "deadly" as opposed to "dangerous," and analyzed "deadly" in terms of potential for producing death or great bodily harm. We perceive no functional difference in the terms, however. By statute, the "dangerous" weapon or means must be one which endangers or threatens life. G.S. 14-87(a); *State v. Mullen*, 47 N.C. App. 667, 267 S.E. 2d 564 (two terms synonymous), *disc. rev. denied*, 301 N.C. 103, 273 S.E. 2d 308 (1980); *see* G.S. 14-27.2 (rape with "dangerous or deadly" weapon).

B

[2] Our research has disclosed no case which unequivocally holds that a knife is *always* a dangerous weapon *per se*. Rather, the circumstances of each case must be considered: for example, the extent of the threat to the victim, *State v. Ross, supra* (knife held to throat); the physical stature of the knife wielder, *State v. Sturdivant, supra* (large man used knife); the weakened state of the victim, *State v. Archbell*, 139 N.C. 537, 51 S.E. 801 (1905); or whether or not and to what extent the victim was actually injured, *State v. Roper*, 39 N.C. App. 256, 249 S.E. 2d 870 (1978) (victim's throat slashed). The circumstances of the case, rather than the physical description of the knife itself, ultimately determine this issue. *Sturdivant*. This is particularly true in armed robbery cases because the issue of whether a weapon is dangerous is so closely related to another key element, *i.e.*, whether a person's life was in fact endangered or threatened. G.S. 14-87(a); *State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982).

## C

There is authority that whether or not a knife is dangerous or deadly is solely for the court. *State v. Roper, supra; State v. Collins*, 30 N.C. 407 (1848). This authority appears to rest on older cases where the weapon was either introduced into evidence or described in detail without contradiction. "Whether the instrument used was such as is described by the witnesses, where it is not produced, or, if produced, whether it was the one used, are questions of fact; but these ascertained, its character is pronounced by the law." *Id.* at 412-13 (knife described in detail; stabbing admitted, but provocation raised); *see also State v. West*, 51 N.C. 505 (1859) (oak stick produced in court; question of law).

## D

[3] Where the victim has in fact suffered serious bodily injury or death, the courts have consistently held that a knife is a dangerous or deadly weapon *per se* absent production or detailed description. *See State v. McKinnon*, 54 N.C. App. 475, 283 S.E. 2d 555 (1981) ("small pocketknife," punctured lung); *State v. Lednum*, 51 N.C. App. 387, 276 S.E. 2d 920 ("kitchen" or "small paring" knife, multiple stab wounds resulting in serious injuries), *disc. rev. denied*, 303 N.C. 317, 281 S.E. 2d 656 (1981); *State v. Roper, supra* ("keen bladed" or "pocket knife," near-fatal wound).

## E

In cases where the knife has not been produced or described in detail, and the victim has not suffered injury or death, the question of whether a knife is a dangerous weapon is generally for the jury. In *Sturdivant*, the court held that the trial court properly submitted the issue to the jury. The State did not produce the knife or describe it, but the evidence showed it was sturdy enough to puncture an oil can and sharp enough to slash clothing such that in the hands of a large man like defendant it could cause death or serious injury. *See also State v. Ross, supra* (knife not described, evidence conflicted on whether it was held to victim's throat); *State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965) (per curiam) (pocketknife, not otherwise described, "pointed at" victim).

## II

[4] Defendant's first assignment of error, that his motion to dismiss for failure to show that the knife was a dangerous weapon, is overruled. On that motion, the court must consider the evidence favorable to the State as true. *State v. Agnew,* 294 N.C. 382, 241 S.E. 2d 684, *cert. denied,* 439 U.S. 830, 58 L.Ed. 2d 124, 99 S.Ct. 107 (1978). The eyewitness testimony of the victim that defendant held a knife to his throat and robbed him established all elements of the crime and was sufficient to go to the jury. Taking the victim's testimony as true, it shows a use of the knife which had undoubted potential for causing death or serious bodily injury. Our Supreme Court reached the same result on virtually identical evidence in *State v. Ross, supra.* This assignment is overruled.

## III

Defendant's next two assignments are whether the court erred (1) in refusing to submit common law robbery and (2) in instructing that a knife was a dangerous weapon *per se.* These two assignments present the same question, since the existence here of a jury question on common law robbery depends on the existence of a jury question on the dangerous weapon issue.

## A

Common law robbery is a lesser included offense of armed robbery. Where there is some evidence of a lesser included offense, it is error not to charge the jury accordingly. *State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978). This rule applies even when the defendant presents no evidence. *See State v. Joyner,* 312 N.C. 779, 324 S.E. 2d 841 (1985). In *Joyner,* the State's evidence on armed robbery charges was inconclusive as to whether a rifle used actually was operable. The court stated that this constituted *some evidence* of the nonexistence of the element of danger to life, and that such evidence *required* the trial court to permit the jury to consider common law robbery. *Id.* at 784, 324 S.E. 2d at 846. *Compare State v. Peacock,* 313 N.C. 554, 330 S.E. 2d 190 (1985) (State's positive and unequivocal evidence, where defendant presented none, did not support offense on dangerous weapon issue).

B

[5]  Examining the circumstances under which the knife was used in the present case, we conclude that there was *some evidence* of the nonexistence of the element of danger to life, and that the court therefore erred in defining the knife as a dangerous weapon and in refusing to submit common law robbery to the jury. The knife was never produced (the State attempted unsuccessfully to introduce a knife for comparison purposes). The victim simply stated that defendant pulled out "a knife," held it up to the victim's throat, pulled out his wallet and took his money, then ran out. Witness Gatling testified that the knife was "approximately that long," giving no other description. Gatling testified that defendant had an open knife, but that he was holding it down at his side when he entered the hallway where the robbery took place. Defendant told Gatling to mind his own business, and Gatling went down the hall into the back of the cafe, leaving defendant and victim talking. Gatling stayed there a few minutes before going out the back, followed shortly by defendant.

The jury had before it equivocal evidence as to how the robbery was carried out. According to the victim, the knife was drawn and put right to his throat, and defendant took off and ran as soon as he had the money. According to Gatling, defendant and the victim were together for some time. Defendant had a knife but was not holding it at the victim's throat when Gatling came in. These stories contain obvious inconsistencies sufficient to make the State's evidence on the circumstances in which the knife was used less than positive and conclusive. The inconsistencies were for the jury, not the court, to resolve. We therefore hold that the jury should have been instructed on common law robbery. *State v. Ross, supra.*

C

[6]  The State argues that since defendant presented alibi evidence the only choice was between armed robbery and not guilty, citing *State v. Black,* 286 N.C. 191, 209 S.E. 2d 458 (1974). *Black* is distinguishable, however: there all the evidence about the use of the knife was that it was used to threaten the victim, who actually received cuts, and the knife itself was produced. The alibi evidence did not affect these circumstances. The *Black* opin-

ion relied on *State v. Fletcher*, 264 N.C. 482, 141 S.E. 2d 873 (1965) (per curiam), where there was again only one version of how the knife was used, the knife was described in detail, and the defendant reached around the victim with his other hand. As noted above, defendant could obtain the benefit of inconsistencies in the State's evidence if he put on no evidence at all. *State v. Joyner, supra.* Nothing in *Black* or *Fletcher* suggests that defendant waives that benefit by putting on his own alibi evidence.

### D

Whether or not the circumstances of its use made the knife a dangerous weapon constituted a key feature of this case. On this evidence, the jury should have been allowed to decide it. Both assignments of error are well taken, and defendant is entitled to a new trial.

### IV

Defendant also assigns error to certain arguments of the prosecutor, arguing that the absence of the trial judge during parts of the argument compounded the error. Since we have decided that defendant is entitled to a new trial, we need not reach these questions. We note that our Supreme Court has declined to absolutely *require* the trial judge's presence during jury arguments. *State v. Arnold*, 314 N.C. 301, 333 S.E. 2d 34 (1985).

### CONCLUSION

For error in failing to submit a lesser included offense and in defining a knife as a deadly weapon *per se*, there must be a new trial.

New trial.

Judges WHICHARD and COZORT concur.