BERGER, Judge.
On October 26, 2017, Jermaine Moore ("Defendant") was convicted of assault with a deadly weapon inflicting serious injury and sentenced to serve forty-two to sixty-three months in prison. Defendant timely appeals, arguing that the trial court erred by (1) instructing the jury that the pocketknife used was a deadly weapon as a matter of law; (2) denying Defendant's request to instruct the jury on the lesser-included offense of misdemeanor assault inflicting serious injury; and (3) failing to instruct the jury, sua sponte , on the defense of accident. We find no error.
Factual and Procedural Background
Defendant and Wendy Dawn Moore ("Moore") were married on December 4, 2015 and separated on March 14, 2016. During their four-month marriage, Moore and Defendant had several altercations in which Moore had been physically injured and required the involvement of law enforcement.
On August 21, 2016, Moore met Defendant in the parking lot of the Comfort Inn in Winterville to discuss their relationship and the possibility of reconciliation. Soon after she had joined Defendant in his car, however, Moore and Defendant began fighting. Moore testified that Defendant had grabbed her cell phone from her hand, "opened the driver's side door and slammed it on the ground." Defendant then grabbed Moore's wrist and arm to prevent her from leaving his car. They struggled until Defendant pulled out a pocketknife and slashed Moore's inner right forearm. Moore did not realize that Defendant had cut her until she saw that she was "gushing blood like a water fountain." After wrapping Moore's arm in a towel to try to slow down the bleeding, Defendant drove them both to a nearby hospital.
At the hospital, Moore received seventeen stitches and was told she would need reconstructive surgery to repair nerve and tendon damage. Moore told her doctor that she had cut herself "playing with a knife." She returned to her home in Kentucky later that night without reporting Defendant to the police. While driving back to Kentucky, Defendant called Moore to apologize.
On August 28, 2016, Moore returned to North Carolina to press charges against Defendant. Moore told Officer Alex Smith ("Officer Smith") of the Greenville Police Department how she had sustained her injuries. Officer Smith then filed an incident report and took photographs of Moore's week-old wound. Later that evening, Defendant was arrested. On March 27, 2017, Defendant was indicted for the felonies of first-degree kidnapping and assault with a deadly weapon inflicting serious injury.
At trial, the State introduced the two photographs that Officer Smith had taken of Moore's injured forearm. The photographs depicted seventeen stitches that had closed the laceration that spanned the width of Moore's right inner forearm. During Moore's testimony, the State had her show the jury the scar that was still visible on her forearm. Additionally, Moore testified that she still suffered from numbness in portions of her arm and index finger.
On October 26, 2017, Defendant was convicted of felony assault with a deadly weapon inflicting serious injury. Defendant was sentenced to forty-two to sixty-three months in prison. Defendant timely appealed, and argues that the trial court erred by (1) instructing the jury that the pocketknife used was a deadly weapon as a matter of law; (2) denying Defendant's request to instruct the jury on the lesser-included offense of misdemeanor assault inflicting serious injury; and (3) failing to instruct the jury, sua sponte , on the defense of accident.
Analysis
I. Deadly Weapon Jury Instruction
Defendant first contends that the trial court erred by instructing the jury, over Defendant's objection, that Defendant's knife was a deadly weapon as a matter of law. We disagree.
"Where the defendant preserves his challenge to jury instructions by objecting at trial, we review the trial court's decisions regarding jury instructions de novo. " State v. Hope , 223 N.C. App. 468, 471, 737 S.E.2d 108, 111 (2012) (purgandum[1] ). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams , 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).
By statute, the essential elements of assault with a deadly weapon with intent to inflict serious injury are (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; (4) not resulting in death. A deadly weapon is any article, instrument or substance which is likely to produce death or great bodily harm.
State v. Lawson , 173 N.C. App. 270, 279, 619 S.E.2d 410, 415-16 (2005) (citations and quotation marks omitted); see also N.C. Gen. Stat. § 14-32(b) (2017).
The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself. Where there is no conflict in the evidence regarding both the nature of the weapon and the manner of its use, the applicable principles in determining its deadly character [have been well stated]:
Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly within the foregoing definition is one of law, and the Court must take the responsibility of so declaring. But where it may or may not be likely to produce fatal results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury.
State v. Palmer , 293 N.C. 633, 642-43, 239 S.E.2d 406, 412-13 (1977) (purgandum ).
"Our research has disclosed no case which unequivocally holds that a knife is always a dangerous weapon per se ." State v. Smallwood , 78 N.C. App. 365, 368, 337 S.E.2d 143, 144 (1985). Nevertheless,
[t]he definition of a deadly weapon clearly encompasses a wide variety of knives. For instance, a hunting knife, a kitchen knife and a steak knife have been denominated deadly weapons per se . A pocketknife is also unquestionably capable of causing serious bodily injury or death. In State v. Collins , the [Supreme] Court opined that a pocketknife, having a blade two and a half inches long, was a deadly weapon as a matter of law. 30 N.C. 407, 409, 412 (1848).
State v. Sturdivant , 304 N.C. 293, 301, 283 S.E.2d 719, 725-26 (1981) (citations omitted). Our appellate courts have similarly identified the following knives as deadly or dangerous per se : a utility knife with a "very sharp," one-inch blade, State v. Torain , 316 N.C. 111, 121, 340 S.E.2d 465, 471 (1986) ; "an open pocketknife with a 'two and a half to three inches blade,' " State v. Mason , 79 N.C. App. 477, 478-79, 339 S.E.2d 474, 475-76 (1986) ; and "a knife with a three-inch blade ... when used as a weapon in an assault," State v. Cox , 11 N.C. App. 377, 380, 181 S.E.2d 205, 207 (1971) (citation omitted).
When assessing whether a particular knife should be considered a deadly weapon as a matter of law,
the circumstances of each case must be considered: for example, the extent of the threat to the victim; the physical stature of the knife wielder; the weakened state of the victim; or whether or not and to what extent the victim was actually injured. The circumstances of the case, rather than the physical description of the knife itself, ultimately determine this issue. ...
Where the victim has in fact suffered serious bodily injury or death, the courts have consistently held that a knife is a dangerous or deadly weapon per se absent production [of the knife itself into evidence at trial] or [a] detailed description [of the knife via trial testimony].
Smallwood , 78 N.C. App. at 368-69, 337 S.E.2d at 144-45 (citations omitted).
Here, the pocketknife used in the assault was neither introduced into evidence nor described in detail at trial. Nevertheless, the State's evidence tended to show that Moore had suffered a life-threatening injury due to the amount of blood loss. Defendant had slashed Moore's inner forearm with a pocketknife causing her to "gush[ ] blood like a water fountain." After he had wrapped Moore's arm in a towel in an attempt to slow the "blood pouring from her arm," Defendant immediately drove them both to a nearby hospital. At the hospital, Moore received seventeen stitches and was told that she would need reconstructive surgery to repair nerve and tendon damage. Due to the severity of Moore's injuries inflicted by Defendant's use of the pocketknife, the trial court did not err by instructing the jury that the pocketknife used in the assault was a deadly weapon as a matter of law.
II. Lesser Included Offense Jury Instruction
Defendant also argues that if this Court finds the trial court erred by instructing the jury that the knife used in the assault was a deadly weapon per se , then the trial court additionally erred by denying his request to instruct the jury on the lesser-included offense of misdemeanor assault inflicting serious injury. However, this Court has previously found "that it was the proper function of the trial court to determine that this knife was a deadly weapon per se . As a result, there was no error in the judge's failure to submit the lesser included offense of assault inflicting serious injury. The trial court need not submit a lesser included offense where there is no evidence to support such a verdict." State v. Roper , 39 N.C. App. 256, 258, 249 S.E.2d 870, 871 (1978) (citations omitted).
III. Defense of Accident Jury Instruction
Defendant argues that the trial court erred by not instructing the jury, sua sponte , on the defense of accident. Defendant concedes that he did not request the trial court give this instruction and therefore requests this Court to review the alleged error for plain error. We do not find plain error.
"It is well established that when a defendant requests a special instruction which is correct in law and supported by the evidence, the trial court must give the requested instruction, at least in substance." State v. Thompson , 118 N.C. App. 33, 36, 454 S.E.2d 271, 273 (1995) (citation and quotation marks omitted). However,
[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.
N.C.R. App. P. 10(a)(2). However, unpreserved instructional errors nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error. N.C.R. App. P. 10(a)(4).
We note that the term plain error does not simply mean obvious or apparent error ... [and] [t]he adoption of the plain error rule does not mean that every failure to give a proper instruction mandates reversal regardless of the defendant's failure to object at trial. To hold so would negate Rule 10 [ (a)(2) ] which is not the intent or purpose of the plain error rule. The purpose of Rule 10 [ (a)(2) ] is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial. Indeed, even when the plain error rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.
State v. Odom , 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983) (purgandum ).
"In deciding whether a defect in the jury instruction constitutes plain error, the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." Id. at 661, 300 S.E.2d at 378-79 (citation and quotation marks omitted). When reviewing the record evidence, the appellate court should also consider whether "the defendant answered in the negative when asked by the court if he had any further requests" for jury instructions. Id. at 662, 300 S.E.2d at 379.
"Our Supreme Court has held on numerous occasions that it is the duty of the trial court to instruct the jury on all of the substantive features of a case. ... Failure to instruct upon all substantive or material features of the crime charged is error." State v. Bice , --- N.C. App. ----, ----, 821 S.E.2d 259, 266 (2018) (citations and quotation marks omitted). "All defenses arising from the evidence presented during trial, including the defense of accident, are substantial features of a case and therefore warrant instructions." State v. Garrett , 93 N.C. App. 79, 82, 376 S.E.2d 465, 467 (1989) (citation omitted).
For a jury instruction to be required on a particular defense, [however,] there must be substantial evidence of each element of the defense when the evidence is viewed in the light most favorable to the defendant. Substantial evidence is evidence that a reasonable person would find sufficient to support a conclusion. Whether the evidence presented constitutes substantial evidence is a question of law.
Bice , --- N.C. App. at ----, 821 S.E.2d at 266-67 (citations and quotation marks omitted).
Here, the trial court would only be required to instruct the jury regarding the defense of accident if substantial evidence had been introduced showing that Defendant injured Moore (1) unintentionally, (2) "during the course of lawful conduct," and (3) in a manner that did "not involve culpable negligence." N.C.P.I.-Crim. 307.11.
There is no evidence in the record to support a finding that Defendant's actions did not involve culpable negligence. The evidence tended to show that Defendant and Moore had struggled inside Defendant's car until Defendant pulled out a pocketknife and slashed Moore's inner right forearm. Defendant's act of pulling out a pocketknife while he was in close proximity to and engaged in a physical altercation with Moore demonstrates that Defendant acted with "such gross negligence or carelessness" and "a thoughtless disregard of consequences or a heedless indifference to the safety and rights" of Moore. N.C.P.I.-Crim. 307.11.
As the evidence reflects that Defendant acted with culpable negligence, at a minimum, the State's evidence negated at least one of the requisite elements of the defense of accident. Accordingly, the trial court did not err in not instructing the jury sua sponte on this defense. As there is no error, plain error is necessarily absent.
Conclusion
The trial court did not err when it instructed the jury that the pocketknife used in the assault was a deadly weapon as a matter of law, and also did not err by not instructing the jury on the lesser-included offense of misdemeanor assault inflicting serious injury. Finally, the trial court did not err when it did not instruct the jury sua sponte on the defense of accident.
NO ERROR.
Report per Rule 30(e).
Judges HUNTER and DAVIS concur.

Our shortening of the Latin phrase "Lex purgandum est. " This phrase, which roughly translates "that which is superfluous must be removed from the law," was used by Dr. Martin Luther during the Heidelberg Disputation on April 26, 1518 in which Dr. Luther elaborated on his theology of sovereign grace. Here, we use purgandum to simply mean that there has been the removal of superfluous items, such as quotation marks, ellipses, brackets, citations, and the like, for ease of reading.